Good morning again. I'd like to speak on behalf of the appeal of King Chi Lum, the former police chief of Kauai. Mr. Lum's lawsuit, which was dismissed by the trial court on motions for summary judgment, was initiated by him when it became clear to him that certain police officers, certain public officials, did not want him to remain in the job of police chief. They did not want him to remain in the job of police chief because he's Chinese and he speaks with an accent, and because he had filed a discrimination complaint with the Equal Employment Opportunity Commission in April 2005, and he filed a complaint with the Hawaii Civil Rights Commission at that same time. And another reason is he was the lieutenant in charge of a police operation in 1995, in which a police sting of a pimp and a prostitute that went bad when police officers took her back to the Kauai police station, took a female arrestee, and at the police station, disrobed that arrestee, found her, and took pictures of her. When Lum later on, a couple days later, found out that this had occurred, he interviewed the arrestee, he prepared a report, and he delivered that report to the police chief, the chief of police. And because of this reporting of this misconduct by police officers, five Kauai Police Department police officers were arrested. Johnson, I think we're familiar with the facts. It might be helpful if you address the issue on the termination of the contract because of ethical misconduct of somebody other than your client. That's the problem that I see in this case. It's an interesting situation. Normally when we have an employee coming forward, as in your prior case, the issue is what that person has done to warrant being terminated. In this case, he was the chief of police appointed by an oversight board, and apparently there was an ethical violation that was found by the separate investigation. It wasn't unethical conduct by your client. It was by somebody on the appointing board. And it's my understanding, and that's what the district court found, as I understand, that it was within the rights of the county or the city, I'm not sure, the county, to void the employment agreement with your client because his appointment was obtained through unethical conduct. Now, it isn't unethical conduct of chief law. Nobody's saying that. But don't you have to get over that hurdle in some fashion? Yes, Your Honor, and I think we have because the trial court apparently did not look at Hawaii State Law and see that the Supreme Court, in the Waikiki Resorts case, had found that when a public body makes a decision and a person within that body, one of the board members, is disqualified for a conflict of interest, then as long as there is still a majority that voted for the action, the state action stance, and that is what we had in this case. In addition, not only the Waikiki Resorts, but the subsequent case of the Hui Malama Aina case, in which one of the city council persons had a conflict of interest in a matter before the county council, the city council, excuse me. And in that case, the court again upheld the action, holding that if there is a majority that still exists that is untainted, then the decision and the action of that public body stands. The trial court disregarded the case law, stating that Hawaii had not reached that issue. Well, Hawaii had. And as your honors have stated, Mr. Lum was not terminated because of his own misconduct. He was terminated because of the misconduct of a third person. What effect does his resignation have? It was somewhat of a preemptive resignation. He said he was doing it because he thought that he wouldn't get benefits. He wouldn't get health benefits. If he stayed and was terminated. So are you arguing that that was a constructive discharge? Yes, your honor. And what are the facts in the record that support the standard for constructive discharge? Well, in this case, the finance director, Mr. Tressler, had decided that that was not an employment contract. This was a contract for personal services. In other words, Mr. Tressler made the decision and characterized the five-year employment contract, which Mr. Lum had entered into with the police commission for five years. He characterized that as not being covered by that particular statute and not being covered by the county charter, which granted and gave Mr. Lum a due process hearing. Notice of the charges made to him and a hearing before the police commission. Mr. Tressler decided that that didn't apply. He further found, and he issued a letter on May 30th saying your contract has been terminated, but the effective date of this decision is not until June 7th, 2005. I thought it was June 8th, and then he resigned June 7th. He issued the decision on May 30th, but it wasn't to be effective until a later date, about a week later. And so it was clear at the time that Mr. Tressler issued his letter on May 30th that he had already made up his mind Casey Lum was going to be gone, and Mr. Lum had legitimate concern based upon the statute that he would not be receiving medical benefits if his termination from county employment was not in good standing. And that's how he perceived that. So he left, but he left because Mr. Tressler had made up his mind that he was not going to give Mr. Lum a due process hearing. And he made a decision to terminate, but that decision would not take effect until a later date, a week later. Now, under the employment agreement, you're saying he had a right under the employment agreement to a due process hearing. He had a right under the employment agreement plus a provision within the county charter. All right. And if he was offered an opportunity to come in and make his case to Tressler, was he not? Yes. And he declined to do that? Tressler declined to give him the due process hearing. No, but Tressler offered him the opportunity to come in and talk and persuade him or at least present Mr. Lum, Chief Lum's reasons for continuing his employment. Isn't that correct? Mr. Tressler gave Mr. Lum the opportunity to come in to address him, did not give him the opportunity to call any witnesses? Yes. That's what I was getting at. Because in this case, it's not Mr. Lum whose conduct is at issue. So what was the due process hearing going to cover? What witnesses would he need? There had already been an investigation into the ethical misconduct. Was he proposing to retry that issue? No, he was proposing to call individuals who participated in that proceeding, the other police commissioners, and they all testified that they did not know of any misconduct by Mr. Ching. And so that would have laid your foundation for them saying that this majority of the appointing authority was all untainted and therefore... That's correct. Okay. Because they would have all testified that they made their minds up about the candidates, the three candidates before them, based upon their own decision, based upon their review of the record, and based upon a psychological report that found Mr. Lum to be the best qualified. And that is the problem. And then to address the issue of conspiracy, Mr. Trestler and we submitted to the trial court an affidavit from Mr. Spangler, who testified, who stated in his affidavit that on April 6, 2006, both he and Mr. Trestler were present at a county budget meeting. The county council was reviewing budgetary requests of the police department plus other agencies. Mr. Spangler testified that during a lunch break, he approached Mr. Trestler. Mr. Trestler knew that Mr. Spangler was a supporter of Chief Lum, questioned him about that relationship, how he could support Chief Lum, how he could support the police department. And then the conversation turned to the rejection by the county council of the request that Mr. Gonsalves be removed from office, his police commission position. And Mr. Trestler is quoted as saying that when the county council decided not to remove Leon Gonsalves as a commissioner, we had to come up with another plan. That is what he stated. And he stated that they decided that they would go after Ching by filing an ethics complaint and that Ching had been found guilty and removed and that Ching would be fined a certain amount of money. And that Carol Furtado, another police commissioner who voted for Mr. Lum as the permanent chief, would be next. At that time, at that point in time, April 2006, Ms. Furtado had, pending against her, complaints with the ethics board that she acted improperly in voting for Chief Lum. At no time was that evidence disputed. It was not contradicted by Mr. Trestler. And so what we have is that the person who decided that this was not an employment contract makes the decision that it is a personal service contract and therefore Mr. Lum has no due process rights. And Mr. Trestler, in his deposition, testified that he had certain biases against Mr. Lum. He had supported Mel Raposo, a key, a sergeant who was removed as a result of the Fantasy Express incident, who is now a member of the county council, and that he was indeed Boyan Prince of Mr. Raposo and that he, Mr. Trestler, had worked on Mr. Raposo's campaign. And he basically downplayed and he stated that it was his perception that the press had overstated this racial slur of being called oppsing and had also overstated this conspiracy that was fanned around. So we have, in this case, a decider who has his own baggage, which is bias towards Mr. Lum, making a decision that Mr. Lum was not to be afforded the due process rights that his own employment contract required and the county charter required. Thank you. Thank you. You have a couple of minutes for rebuttal when the time comes, if you would. Good morning, Your Honors, and may it please the Court. Greg Ushiroda, appearing on behalf of Kauai County Council, Mayor Baptiste, Director Trestler, and the County of Kauai. By agreement with Mr. Nakamura, we're going to split our time evenly, and I'll take seven and a half minutes before turning over the podium to Mr. Nakamura, if that's okay with you, Your Honors. Okay. I have something prepared, Your Honors, but I think I'm just going to reply very briefly to Mr. Ikei's arguments. First, the District Court properly found that Mr. Lum did not have a property interest in continued employment as Kauai Police Chief. And I think that is the first question that has to be analyzed, and that's the first question that the District Court analyzed. Does Mr. Lum have a property interest? And the answer is no, because that property interest, or not that property interest, but his appointment and subsequent employment contract to become the Chief of Police was procured through an illegal process, in the sense that it violated specific county Kauai charter provisions and code provisions, as found by Judge McConnell. What is your response to counsel's argument that under Hawaii law, if there is one tainted member of a decision-making panel, then one looks to whether there are enough votes without that, and therefore that the agreement would not be void because a majority would still exist to have appointed Chief Lum? Well, first I want to point out that this issue was not raised below. This issue was raised for the first time on appeal in the move-on to briefs. Well, it's just a matter of law, isn't it? True. What is the course of law in the county with respect to that? Are there any decisions or any rules, any statutes? No, Your Honor, and I would distinguish, getting back to Judge Graber's question, is that the cases cited by Mr. E.K. I don't believe are applicable to this case. Those two cases, they were not employment cases. They were concerned, one was, well, I believe they both had to deal with issuance of permits regarding buildings and property construction. I take it if one is just a basic police officer or even a so-called commissioned officer or lieutenant and so on, they have civil service status in those capacities but not as Chief? That is correct, Your Honor. All right. When one then is relieved as Chief, does he go back to his old rank as a lieutenant or patrolman or whatever the case may be? That I don't know the answer to, but in this case, Your Honor, Mr. Lum was offered a return to his position as lieutenant, which he declined. So he voluntarily quit the service? He, yes. Okay. So the Waikiki Resorts in the other case are permitting cases, and you're saying that if a permitting board has five members and one member is corrupt, but if you can show that the other four acted independently and without taint, then the permitting process can go forward, is that it? Well, that is what the Hawaii Supreme Court held. But, Your Honor, if you look at the cases, factually they're distinguishable. In the Waikiki Hotel case, the board member in question, Mr. Kelly, he disclosed that he had, you know, I might have this potential conflict coming up, and can I still participate or should I withdraw? And it was discussed and vetted, I believe, with the Deputy Corporation Counsel, and it was determined on a vote that, no, I think it will be okay if you proceed. Although the Hawaii Supreme Court did ultimately boo in favor of the puns, they did note that in the case of Mr. Kelly, it was not entirely clear that there was any wrongdoing on his part. Okay, without getting too bogged down on your time, limited time in the detail, we can read the case and take a look at that. But I'm still trying to understand, then, the county's posture. If you have a five-member – is this a five-member board? Yes. Okay, so you have a five-member board, and unbeknownst to four of the five, one of the commissioners goes out and does unethical lobbying on behalf of the candidate. But the evidence is clear to the county that the four members who voted – this was a divided vote, but I think, wasn't it, I guess one of the people voting against him was the person who was disqualified? Yes, four to one. Four to one. So the four members proceeded without – I'm assuming these are the facts. They may not be, but I just want to understand your legal position. If the four members had no knowledge of it, and the whole selection process over the chief of police would have been identical, regardless of what the dissenter was doing, then is it your position that the contract is void, or is it voidable? Or, in other words, what happens? Because you've hired this police chief, he's changed position, he's done all of these things, he has an expectation of this employment. So what is it that the county says is the status when he – when all that's out there is the action of a person who actually voted against him, and he got four police commissioners who wanted him to be chief of police? What is it legally? Legally, the contract is void at the outset. Void or voidable? Void. Void as the case law that we cited in Bailey, Schley, Spivey, Walsh, and Walters, where it states that a contract, an employment contract, or appointment, that is secured by a process that violates or is contrary to state and county law, is void at the outset. Therefore, you cannot have a legitimate expectation in continued employment. What's weird about that – I'm sorry. You could elect on a 3-2 vote, couldn't you, if everybody was clean as far as prejudice is concerned? Well, I think the concern here, Your Honor, is that I think what – and if you look at Judge McConnell's findings, is that he found that Mr. Ching's actions is that – I believe one was that he concealed or he misrepresented his actions as towards solicitation of chauffeur. That was concealed from his board members. So that could have also – by implication, that means that this would raise some serious ethical questions as about whether this selection process is valid. What that does, though, it gives the dissenter a remarkable weapon because if you're on a five-member board or a 50-member board or whatever, and you're the lone dissenter, you can completely destroy what the majority wants to do by going out and doing something unethical and then coming in and voting. And it undoes everything that the majority otherwise legitimately could do. And I can understand, I think, if the person were on the other side. But what this does, it seems to me, is it gives the lone dissenter a veto power over an otherwise valid contract by virtue of their own unethical conduct. I just find that strange as a systemic way of looking at it. And, you know, is that really the public policy of Hawaii? Is there a code section we can see where this is spelled out? I'm not aware of a code section. What is it? Sort of a club rule or something? No, no. Boys are put together on the side? No, Your Honor. It's not a club rule or anything like that. It's not a – this is not anything taken – Well, where do I find it? Is it in the books or on paper or in a charter or what? Well, the procedure that the Kauai County followed is set forth in the code, which says – Okay. And in what code section do I look at? That would be 3.1 – .11. Okay. And there it spells out that a contract entered into violation with – entered into violation. Yeah, but what does it say? You just told me it was void. It says, in addition to any other penalty provided by law, any contract entered into by the county in violation of this article is voidable. Correct, Your Honor. It doesn't say void. Yes. Well, that's a big difference, isn't it? It is a very big difference, Your Honor. So you're conceding your argument?  Well, why did you tell me it was void? Because the case law holds, Your Honor, that a contract that is an employment contract or appointment that is secured through a process that violates county or state law is void at the outset. And this is what the district court agreed with. In an employment contract. Yes. Not necessarily a permitting contract. Not in a permitting context. In a permitting context, you can show somebody's – that was what the hotel case was. Correct. But if it's an employment contract, then it's a void. That's where I would draw the distinction. Okay. I'm sorry. Go ahead. It's just that I would like to leave some time. Yes. I know you have a lot of questions for me, but I would like to leave some time for Mr. Nakamura. You may do that. Okay. Good morning, Your Honors. My name is Richard Nakamura. I represent the appellee defendant, Leon Gonzalez. And first of all, welcome to Hawaii. Thank you. Your Honor, when the court decides this case, we would submit that there are really a race-based discrimination claim, an employment claim, as well as a Whistleblowers Act claim. Those are probably the two distinct claims that are being made against Ms. Gonzalez. And these claims really stand on three separate legs. The first leg is the Hobson email, which unarguably was authored by my client. The second claim is the filing of the complaint by my client with the Board of Ethics Commission of the County of Kauai, as well as the Attorney General's Office for the State of Hawaii. The third leg, of course, is what Mr. Ike has referred to as a fantasy express affair. Now, when the court examines each of the individual legs, we do not believe that they would stand in overrule of what Judge Marley has already decided is the most reasonable judgment. First of all, Your Honor, with respect to the Hobson email, it is undisputed that that was, in fact, the plaintiff's nickname in the Kauai Police Department as far back as the 1980s. Similarly, it's undisputed that the plaintiff never objected to the use of the nickname Hobson until the email that was sent in October of 2004. Third, that for purposes of this particular lawsuit, the use of that nickname was on only a single occasion, and that was the email that has been referred to in this particular case. Lastly, there is no evidence presented by anyone that Mr. Gonzales knew that somehow that this nickname was offensive to Mr. Lum and, in fact, apologized to Mr. Lum when he learned that the nickname was, in fact, offensive. I think this Court has recognized that a single square remark is not a basis for a race-based employment discrimination claim and that there is no evidence in this case that the workplace was permeated with discriminatory intimidation, ridicule, insult sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment. Now, in looking at the second basis for the plaintiff's claim, or what I call the second leg, is the filing of the complaint with the Board of Ethics as well as the State Attorney General's Office. Now, as the Court has already pointed out, the filing of the complaint was not directed against the plaintiff. The filing of the complaint was actually directed against one of his fellow commissioners, Mr. Michael Chang. It is also undisputed in this record that the filing of the complaint by Mr. Lum was actually sustained by an independent hearing officer, a former judge, Judge McConnell. This finding was then transmitted to the Kauai County Board of Ethics with the recommendation that the contract be voided. In turn, it was sent over to the Kauai County Council, who followed the recommendation, then passed on that recommendation on to the mayor of the county, who then sent it to Mr. Tressler, who is a defendant in this case. Now, what is undisputed in this particular case, and even the plaintiff will concede, is that once the complaint was filed, Mr. Gonsalves had nothing to do, nothing at all to do with the voiding of his employment contract. We would submit that in this particular case, that cannot constitute an adverse employment action because there is none. All Mr. Gonsalves did was file a complaint with the Ethics Commission. The third leg upon which the plaintiff rests his case is what is called fantasy express affair. And I think even the plaintiffs will concede that the concerns expressed by Mr. Gonsalves with the expected fantasy express affair was not race-based. It was certainly a job performance of Mr. Lum in his capacity to supervise. And it was about a decade before the end of his employment. Exactly. And these were complaints that were brought up by Mr. Gonsalves during the course of the selection of the chief of police, prior to his becoming even employed with them. Now, the plaintiff also attempts to utilize the fantasy express affair as a COI whistleblower's violation. But again, the use of the fantasy express affair did not result in any type of adverse job employment with the county of COI. In fact, the plaintiff was, in fact, selected as the chief of police, despite the complaints made by Mr. Gonsalves. I'm sorry, go ahead. I'm going to ask you to wrap up because you have exceeded your time. Yes. So a couple of sentences to wrap up. Thank you. Secondly, there is no adverse employment action under the Whistleblowers Act because, again, Mr. Gonsalves had nothing to do with the voiding of the contract of the chief of police. He simply was the initiator of the complaint. Yeah, I think I misspoke. In the four-to-one vote, Gonsalves was the dissenting person. I was going to clarify that. He was the dissenter. Yes, but, in fact, he was not the one who was found to be guilty of any unethical conduct. No, he was not. He was one of the four people. Yes. Actually, the guilty party was the chairman of the police commission. Okay. Thank you. I'm sorry for the confusion. You have some rebuttal time remaining, Mr. K. Is that how much time I have? Yeah, you have about two minutes. Okay. I'd like to go back to the arguments of the defense counsel. When Judge Mulway found that there was no property interest at Lumhead, the appellate head, in his continued employment, what followed thereafter was her reasons for, one, dismissing the discrimination complaint, because Mr. Lumhead had no property interest in his job. Do you agree in that regard? Do you agree with their understanding of Hawaii law, that notwithstanding the avoidable language in the Kauai Code, that employment contracts, a violation of the ethics provisions, makes the employment contract void, not just avoidable? No, I don't. And because of the presence of the two Hawaii Supreme Court cases and the fact that Mr. Tresler did not find that this was an employment contract, he found that it was a contract for services. In other words, he had two categories to decide, one of which Mr. Lum would be entitled to a due process hearing, employment contract. A contract for personal services was not, the person under the county charter was not entitled to a due process hearing. That is what he found Mr. Lum to have engaged in, to enter into. But it was clear and simple, a employment contract for five years. To get back to my point, Your Honor, after the court found that Mr. Lum had no property interest in his continued employment, the court then found he had no reason to complain about discrimination, he had no right to be free from retaliation whatsoever, and that is the problem we have. Thank you, Your Honor. Thank you, counsel. We appreciate the arguments of all counsel. This case is submitted and we will be adjourned for this session. Thank you very much.
judges: Beezer, Graber, Fisher